IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| ROBERTO LOPEZ, JR. and | § | |
| ROBERTO LOPEZ | § | |
| | § | |
| VS. | § | CIVIL ACTION |
| | § | |
| | § | NO. 2:15-cv-00118-AM-CW |
| | § | |
| CEM INSURANCE COMPANY | § | JURY |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

CEM Insurance Company ("CEM"), the Defendant herein, files this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule CV-7. Defendant seeks summary judgment on the Plaintiffs' entire claim and would respectfully show:

**I.**

**STATEMENT OF ISSUES**

A.     **Background and Plaintiffs' Claims**.

This is a civil action in which Plaintiffs seek recovery of contractual and extra-contractual damages, as well as attorney's fees, pursuant to a Final Default Judgment entered against Bryan Santiago ("Santiago") and Claudia Ruiz ("Ruiz") in Cause No. 14-05-29501-MCVAJA in the 365th Judicial District Court of Maverick County, Texas ("the underlying lawsuit").[1] The underlying lawsuit arose from a motor vehicle accident between Plaintiffs and Santiago. The vehicle operated

---

[1]     See Plaintiffs' Original Petition, Document 1, p. 16.

by Santiago was insured under a personal auto insurance policy ("the policy") issued by CEM to Santiago's mother, Ruiz.[2]

Plaintiffs contend that they are entitled to recover under the insurance policy on the default judgment as judgment creditors.  They further claim the right to recover additional amounts for extra-contractual claims that Santiago and Ruiz may have against CEM under a Turnover Order entered in the underlying lawsuit.[3]

Plaintiffs' claims fail because there was no coverage for Santiago's operation of the covered vehicle under the policy. The policy includes a "Covered Person Endorsement" that re-defines the term "covered person."  Santiago did not qualify as a "covered person" under the Endorsement because he was a family member and resident of Ruiz's household, but was not listed as an authorized driver on the policy.[4]  The endorsement further provides that no coverage is afforded under the liability portion of the policy while any person who is *not* a covered person is operating the insured vehicle.  Therefore, there was never coverage for the accident or Plaintiffs' claims.

Moreover, even were there coverage to be had, it was never triggered. Neither Santiago nor Ruiz complied with the notice-of-suit conditions of the policy, which are a condition precedent to liability coverage.  Because Santiago and Ruiz never requested a defense, CEM never had a duty to defend the claims against them in the underlying lawsuit.  Absent a duty to defend, there is no duty

---

[2]   The CEM policy, No. PR8403682-00, was issued to Ruiz by and through Pronto General Agency, Ltd. ("Pronto"), as a managing general agent for CEM. It was effective from April 04, 2014 through October 4, 2014. See Appendix A, Affidavit of Mark Gatica, and Exhibit A-1 to the Affidavit, the Declarations page and policy form.

[3]   Plaintiffs' Original Petition, p.6, Document 1, p. 18. The Turnover Order is not in this record. However Plaintiffs allege that one exists and CEM does not dispute that it does.

[4]   CEM policy, No. PR8403682-00, Appendix A, Exhibit A-1 (p. 13 of the policy form).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT – Page 2

to indemnify and no duty to pay the judgment Plaintiffs obtained in the underlying suit.  And, absent

a duty to pay under the contract, all of the Plaintiffs' other claims necessarily fail.

**B.**     **Issues to be Decided by the Court.**

Defendant moves for summary judgment on the following grounds:

- Defendant is entitled to assert all of the same defenses against the Plaintiffs as it would have against its insured.

- The CEM policy at issue alters the definition of "covered person" to include coverage of a family member or resident of the household, but ***only if*** they are listed on the Declarations page or added to the policy by endorsement prior to the loss.

- Santiago was Ruiz's family member (son) and a resident of Ruiz's household at the time of the subject accident.  Santiago was not, however, listed on the policy as an authorized driver prior to the loss.

- The policy contains a notice provision that requires that an insured promptly send the insurer copies of any notices or legal papers in order to trigger the liability coverage and a duty to defend.

- Neither Santiago nor Ruiz complied with the notice provisions of the policy and neither ever requested a defense.

## II.
## STATEMENT OF CONTROLLING UNDISPUTED MATERIAL FACTS

**A.**     **Ruiz's Policy with CEM**

Ruiz chose to purchase a limited policy from CEM, meaning a policy containing

endorsements that limited the coverage she purchased.[5]  In exchange for these endorsements she

received a reduced premium.[6]  One such endorsement is titled "Covered Person Endorsement,"

which operates to narrow the definition of "covered person," as that term is otherwise defined in the

---

[5]   CEM policy, No. PR8403682-00. See Appendix A, at A-1, policy form, A-2, Declarations page and A-3 application and endorsements.

[6]   Appendix A, Affidavit of Mark Gatica, p. 2; Appendix B, Affidavit of Oscar Buitrago, pp. 1-2.

policy.[7] As required by law, the "Covered Person Endorsement" was submitted to and approved by

the Texas Department of Insurance.[8]

The Covered Person Endorsement (OACM.CP.013b) provides in its entirety as follows:

In Part A – Liability Coverage, Insuring Agreement B. "Covered Person" is deleted and replaced by the following:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

B.      "Covered Person" as used in this Part means:

1.      You, for the ownership, maintenance or use of any auto or trailer.

2.      Any family member or resident of your household who is listed in the Declarations or added by endorsement during the policy term prior to loss and possessing a valid driver's license, for the ownership, maintenance or use of any auto or trailer.

3.      A person who is not a family member or resident of your household but is using your covered auto with your express or implied permission.

As used in this Part, "resident" shall mean any person living in your household other than you or a family member.

_____

In PART A – Liability Coverage, Exclusions, the following is added as Exclusion D:

_____

PART A – LIABILITY COVERAGE

Exclusions

---

[7]   Appendix A, Exhibit A-1.

[8]   Appendix A, Affidavit of Mark Gatica, with attached true and correct copy of the approval of the Covered Person Endorsement by the Texas Department of Insurance, Exhibit A-3.

> D.     None of the liability coverages afforded by this policy
>        shall apply while any person who is not a covered
>        person is operating your covered auto or any other
>        vehicle.[9]

It is undisputed that Santiago was the driver of the insured vehicle and the son of the named insured, Ruiz.  It is also undisputed that Santiago was a resident of Ruiz's household at the time of the accident.  Santiago was not, however, listed on the Declarations page of the policy or otherwise added by endorsement as an authorized driver prior to the loss.[10]  The only listed drivers were Ruiz and her husband, Guillermo Santiago Vazquez.[11]  Accordingly, pursuant to the express terms of the Covered Person Endorsement (Endorsement OACM.CP.013b), Santiago did not and does not qualify as a "covered person," as that term is defined in the policy. Therefore, no coverage was or is afforded for any claims arising from the operation of a covered automobile by Santiago, who was not a "covered person."[12]

At the time she completed the application for the subject policy, Ruiz read and signed disclosures explaining each of the limiting endorsements and confirming her understanding and agreement that she was purchasing a limited policy *in exchange for a reduced premium*. Ruiz initialed the box next to the disclosure for the Covered Person Endorsement, which reads:

---

[9]   Appendix A at Exhibit A-1 (p. 15 of the policy form).  See also Exhibit A-1, Declarations page, setting out the applicable endorsements, including OACM.CP.013c, beneath the box identifying authorised drivers, immediately beneath the Explanation to the insured that, "[i]f you would like to add drivers or vehicles, contact your agent immediately."

[10]   Appendix A, p. 4; Appendix B, p. 2.

[11]   Appendix A, Exhibit A-1, Declarations page.

[12]   As quoted above, "None of the liability coverages afforded by this policy shall apply while any person who is not a covered person is operating your covered auto or any other vehicle."  Appendix A, Exhibit A-1 (p. 11 of the coverage form).

THERE IS NO LIABILITY COVERAGE PROVIDED IF AN UNLICENSED FAMILY MEMBER AND/OR UNLISTED FAMILY MEMBER OR RESIDENT IS OPERATING THE AUTO.

- Liability coverage is only provided for you, your family members, and other residents of your household who are licensed and listed on the Declarations Page or other people using your covered auto with your express or implied permission.
- No coverage is afforded unless a covered person is operating the vehicle.[13]

By initialing this disclosure, Ruiz confirmed her understanding that there was no coverage if her son, whom she decided not to identify as a driver on her policy, was operating a covered auto.

In addition, Ruiz signed the bottom of the disclosure page, acknowledging as follows:

By signing and initialing above, I acknowledge that I understand and agree with all terms and conditions contained within the endorsements set forth on this page which are being incorporated into my insurance policy.[14]

The Covered Person Endorsement modifies the definition of "covered person" found in the policy form. Under the *unmodified* language, "covered person" means, in relevant part, "1. You or any family member for the ownership, maintenance or use of any auto or trailer...; 2. Any person using your covered auto." The endorsement modifies the policy definition by limiting coverage for family members and residents of the household to those who are listed on the Declarations page of the policy and by further providing that no liability coverage is afforded while any person who is not a covered person, e.g. Santiago, operates the vehicle.

---

[13]   Appendix A, Exhibit A-2 (application) and Exhibit A-1 (Declarations page).

[14]   *Id.* Exhibit A-2

The policy also contains certain conditions that must be satisfied by the insured before coverage is afforded following a loss.  Specifically, the policy provides as follows:

### PART E – DUTIES AFTER AN ACCIDENT OR LOSS

GENERAL DUTIES

    A.    We must be notified promptly of how, when and where the accident or loss happened.  Notice should also include the names and addresses of any injured persons and of witnesses. If we show that your failure to provide notice prejudices our defense, there is no liability coverage under the policy.

    B.    A person seeking any coverage must:

        1.    Cooperate with us in the investigation, settlement or defense of any claim or suit.

        2.    Promptly send us copies of any notices or legal papers received in connection with the accident or loss.[15]

And:

### PART F – GENERAL PROVISIONS

LEGAL ACTION AGAINST US

    A.    No legal action may be brought against us until there has been full compliance with all the terms of this policy. . . .[16]

---

[15]  Exhibit A-1 (p. 7 of the policy form).

[16]  *Id.* (p. 8 of the policy form).

B.      **The Accident and Resulting Claim.**

According to the Plaintiffs' Original Petition, on or about April 28, 2014, in Eagle Pass, Texas, Plaintiffs were allegedly injured when their vehicle was struck by a vehicle driven by Santiago ("the accident").  See also the police report of the accident.[17]

The accident was first reported to Pronto by the attorney for the Plaintiffs on April 30, 2014.[18] On that date, the attorney for the Plaintiffs faxed a letter of representation and a copy of the police report to Pronto.[19]

On the same day, April 30, 2014, Pronto contacted Ruiz concerning the accident by telephone and learned (1) that Santiago was Ruiz's son, (2) that he lived in Ruiz's household, and (3) that he had borrowed the car to go to work the day of the accident.  Ruiz also admitted that she was aware that her son was not listed on the policy.[20]  Having determined that there was no coverage for Santiago's operation of the vehicle because he did not qualify as a "covered person" under the Covered Person Endorsement, Pronto notified Plaintiffs' counsel, by letter dated April 30, 2014, that it was denying coverage for the claim:

> Please be advised that we are in receipt of your claim and have completed our investigation of coverage in regard to the claim captioned above.  No coverage is available for this loss. Based on the foregoing information, we must respectfully deny your claim and will not be affording coverage for this loss to you or anyone else involved and will be closing our file at this time.[21]

---

[17]   Texas Peace Officer's Crash Report, attached to Exhibit B-1.

[18]   Affidavit of Oscar Buitrago, Appendix B.

[19]   *Id.* and Exhibit B-1, letter of April 30, 2014, with attachment, from Plaintiffs' attorney.

[20]   Affidavit of Oscar Buitrago, Appendix B, p. 2.

[21]   *Id.* at p. 2, Exhibit B-2, letter of April 30, 2014, to Plaintiffs' attorney.

On the same date, Pronto also wrote to Ruiz explaining to her the same conditional denial, but not necessarily foreclosing the possibility of coverage. The letter also reminded Ruiz that she was required to comply with the policy should she be sued and want the insurer to defend her:

> Our investigation revealed that the driver of the auto at the time of the accident does not meet the definition of "covered person", under the your Texas Personal Auto Policy and the OACM.CP.013b endorsement referenced above and thus none of the liability coverages afforded by this policy shall apply, and we must respectfully deny your claim as well as that of the driver of the vehicle at the time of the loss/accident.

>                                \*   \*   \*

> If you have additional independent information, not previously presented, you would like us to consider at this time, please submit that information for my review.

> Further, if in the future you are served or receive legal documents and wish for us to reconsider our coverage decision, for this date of loss/accident, please refer and comply with **PART E - DUTIES AFTER AN ACCIDENT OR LOSS . . ..**[22]

Pronto denied coverage for the claim, but instructed Ruiz that she could request that the denial be re-evaluated and specifically instructed her that she was still obligated to comply with the notice provisions of the policy and provide copies of suit papers to her insurer, if she was sued.

Neither Ruiz nor Santiago ever complied with the notice provisions of the policy, which are a condition precedent to the liability coverage. Neither ever provided the suit papers to Pronto or to CEM. Neither requested a defense from Pronto or CEM or otherwise indicated, expressly or impliedly, that they expected or wanted the insurer to provide them a defense.[23]

---

[22]  *Id.* at pp. 2-3, Exhibit B-3, letter of April 30, 2014, to Mendoza Claudia ldalia (Ruiz). The letter goes on to quote the Part E policy language, set out above, at length.

[23]  Appendix B, p. 3; Appendix C, p. 2.

CEM's managing general agents ("MGA"), including Pronto, are responsible for underwriting and issuing personal automobile insurance policies on behalf of CEM,[24] and then they are responsible for handling any claims arising under those policies.  Insureds who have claims under CEM policies are supposed to contact the MGA that issued the policy for the handling of their claim, but occasionally an insured, claimant, or attorney will contact CEM directly.  If anyone contacts CEM regarding a claim, they are given the phone number for the responsible MGA's claims department and they are instructed to call the MGA to discuss the matter.[25]  Should CEM receive any written correspondence, letter of representation or a copy of any citation and petition concerning a claim or suit, all such correspondence is noted and promptly forwarded to the appropriate MGA, Pronto in this case.  CEM itself received no such communications in this case from Ruiz, Santiago, Plaintiffs, or their counsel.[26]

## C.    The Action Filed by Plaintiffs.

Shortly after Pronto notified all parties of the coverage issue, Plaintiffs filed suit against Ruiz and Santiago in the underlying lawsuit.[27]  According to Plaintiffs, citation was served on both Santiago and Ruiz and a copy of same was provided to CEM.[28]  But neither Santiago nor Ruiz ever

---

[24]   Appendix B, p. 1; and Appendix C, pp. 1-2.

[25]   *Id.*

[26]   *Id.*

[27]   Document 1, p. 16.  Plaintiffs say that the underlying suit was filed in May of 2014.

[28]   *Id.*

sent the suit papers to Pronto or CEM or otherwise contacted either of them to notify the insurer of the suit or to request a defense.[29]

Because Ruiz and Santiago never answered the lawsuit, they suffered a judgment against them by default on June 11, 2015, jointly and severally, in the amount of $50,000.00 to each Plaintiff.[30]

After obtaining the Final Default Judgment, Plaintiffs claim to have obtained a Turnover Order involuntarily assigning to Plaintiffs all causes of action that Santiago and Ruiz had or may have had against CEM, including those arising under the *Stowers* doctrine, the Texas Insurance Code and the Texas Deceptive Trade Practices Act.[31]

Plaintiffs then filed the present lawsuit, initially in state district court, seeking to collect on their judgment and for the extra-contractual claims described above.  CEM has affirmatively pleaded that the action is barred by reason of the Covered Person Endorsement and that there was in any event no duty to defend the underlying lawsuit due to the failure of Santiago and Ruiz to give notice as required by the policy.

### III.

### BRIEF IN SUPPORT

A.      **Summary Judgment Standard.**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477

---

[29]   Affidavit of Oscar Buitrago, Appendix B, p.3; Affidavit of Christopher M. Ducharme, Appendix C, p. 2.

[30]   Final Judgment, Document 1, p. 23.

[31]   Document 1, p. 18. The actual Turnover Order that Plaintiff allegedly obtained does not appear in the record.

U.S. 317, 322 (1986). The moving party must demonstrate the absence of a genuine issue of material fact, but need not negate each element of the non-movant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317 at 323.

Texas law controls the substantive issues concerning the interpretation of a Texas insurance policy sold in Texas. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005) (citing *Erie v. Tompkins*, 304 U.S. 64, 78–79)).

**B.      Plaintiff Steps into the Shoes of the Insured and Cannot Recover on the Judgment if There was No Coverage or No Compliance With Policy Conditions.**

A third-party claimant may sue the insurer of the tortfeasor, but only after liability has been determined by judgment in the underlying lawsuit – as has happened here. *Dairyland Cnty. Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775-76 (Tex. 1983). But, in the subsequent suit on the policy, the third-party claimant steps into the shoes of the insured and may not recover if there was in fact no coverage; the third-party claimant is bound by the terms and conditions of the insurance policy. *Martinez v. ACCC Ins. Co.,* 343 S.W.3d 924, 929 (Tex. App.–Dallas 2011, no pet.) "The beneficiary for whose advantage a contract is made cannot acquire a better standing to enforce the contract than that occupied by the contracting party itself." *Waggoner v. Herring-Showers Lumber Co.*, 40 S.W.2d 1, 4 (Tex. 1931); *Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 435 (Tex. App.–Dallas 1988, no writ).

An insurer's obligation to pay a third-party claim depends upon proof by the third-party beneficiary that there is coverage and that all conditions precedent have been met. *Assoc. Indem.*

*Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998). Thus, as a threshold issue, Plaintiffs must show that there was coverage and that Santiago or Ruiz complied with all conditions precedent.

**C.     Santiago did not Qualify as a "Covered Person" Under the Policy, as that Term is Defined in the Controlling Covered Person Endorsement.**

*In exchange for a reduction in the policy premium,* Ruiz purchased a policy that contained multiple endorsements, including the subject Covered Person Endorsement that alters the definition of "covered person" otherwise contained in the standard policy.[32] The endorsement is set out verbatim above.

Because Santiago was both a family member and a resident of Ruiz's household at the time of the subject accident, but was not specifically listed on the Declarations page, he did not qualify as a "covered person." Therefore, no liability coverage was afforded under the policy for the accident or for Plaintiffs' claims arising from it, against either Santiago or Ruiz.

What claims Plaintiffs may have made against Ruiz are not known and are not a part of the record.  However, because it is not disputed that Santiago was the driver and the only individual in the car, the options are limited. Presumably Plaintiffs made a claim for some variety of negligent entrustment against Ruiz. In any event, no claim against Ruiz  was covered because Santiago was "not a covered person." As quoted above, the policy stipulates that "**[n]one** of the liability coverages

---

[32]   Appendix A, pp. 2-3, Exhibit A-1; Appendix B, pp. 1-2.  In this case, Ruiz also elected to *further limit* coverage and her cost of coverage by opting to include in the policy the "515A EXCLUSION OF NAMED DRIVERS" endorsement, accompanied by the "warning" that: "This acknowledgment and rejection is applicable to all renewals issued by us or any affiliated insurer. However we must provide a notice with each renewal as follows: "This policy contains a named driver exclusion."  The exclusion continues, stipulating with Ruiz, "You agree that none of the insurance coverages afforded by this policy shall apply while. . .[Angel Guillermo Santiago-Ruiz or Reuben Santiago are] operating your covered auto or any other motor vehicle."  See *Id.*

afforded by this policy shall apply while any person who is not a covered person is operating your covered auto or any other vehicle."

### 1.     The purpose of the Covered Person Endorsement is to reduce premiums.

Among the salutary purposes of the Covered Person Endorsement is the cost benefit to the insured. Auto insurance can be expensive, and auto insurance for certain family members (particularly young adults or those with bad driving records) can be *very* expensive because of the added risk they create. In order to make coverage more affordable, an owner of a motor vehicle is and always has been permitted under Texas law to exclude certain drivers from the coverage of his or her policy. *Liberty Mut. Ins. Co. v. American Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1977); *DiFrancesco v. Houston Gen. Ins. Co.*, 858 S.W.2d 595, 598 (Tex. App. – Texarkana 1993, no writ). One way in which an owner can accomplish this is by purchasing a policy which contains what is commonly referred to as a "named excluded driver" endorsement. These endorsements to the policy specifically name the individual(s) for whom coverage is not afforded. The policy is, as a result, less expensive, but if an accident occurs while the "excluded" individual is operating the owner's vehicle, no coverage is afforded. Texas courts have repeatedly held that the named excluded driver endorsement is valid and enforceable.[33]

The Covered Person Endorsement at issue here is closely related to the "named excluded driver" endorsement, both of which Ruiz employed in order to reduce her premium, in that it is

---

[33]     *Spaugh v. Northern Cnty. Mut. Ins. Co.*, No. 09-96-158CV, 1997 WL 465263, at *2 (Tex. App.–Beaumont Aug 14, 1997, no pet.) (not designated for publication) ("We hold that 'excluded driver' endorsements are not void as against Texas public policy and do not conflict with the Responsibility Act."); *Zamora v. Dairyland Cnty. Mut. Ins. Co.*, 930 S.W.2d 739 (Tex. App.–Corpus Christi 1996, writ denied) ("We hold that the named driver exclusion does not contravene Texas public policy, nor does it offend the legislative mandate of liability insurance in the Act."); *Wright v. Rodney D. Young Ins. Agency*, 905 S.W.2d 293, 296 (Tex. App.–Fort Worth 1995, no writ) ("[W]e hold that the [excluded driver] endorsement in this case does not violate public policy.").

intended to make coverage more affordable to owners of vehicles by excluding certain individuals or risks, namely: family members or residents of the household who are not licensed or who were not disclosed to the insurer. The Covered Person Endorsement affords coverage for the operation of a covered auto to:

- The named insured;
- Family members or residents of the household who are licensed **and** who are disclosed to the insurer and listed on the policy; and
- Permissive users of covered autos who are not unlicensed or unlisted family members or residents of the household.

The only class of persons excluded from coverage under the Covered Person Endorsement are those family members and residents of the household who are *unlicensed or who were not disclosed to the insurer* in violation of the insured's duty to provide truthful and accurate answers to the questions on the application.

## 2.   The Covered Person Endorsement promotes Texas public policy.

The Covered Person Endorsement promotes public policy. Indeed it has been approved by the Texas Department of Insurance.[34] The purpose of the "named excluded driver" endorsement is to exclude from automobile liability coverage a specific individual (or individuals) that would otherwise have been included in it. *See Liberty Mut. Ins. Co. v. American Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1977). Excluded driver endorsements serve the public welfare because they may be used to keep unsafe drivers off the public highways. *Di Francesco v. Houston Gen. Ins. Co.*, 858 S.W.2d 595, 598 (Tex. App.–Texarkana 1993, no writ). Indeed, it has been held that public policy *requires* the allowance of such exclusions to enable insured motorists with children or other

---

[34]   Appendix A, Exhibit A-3.

family members having bad driving records to secure insurance they can afford, rather than being relegated to securing coverage from an assigned risk pool at a much greater cost.[35]

The Covered Person Endorsement furthers the Texas public policy in similar ways. It enables drivers with family members or household residents having poor driving records to secure affordable insurance. Ruiz could have purchased a standard policy at a higher cost, but instead she chose to purchase a more affordable, limited policy.  The Covered Person Endorsement also furthers the public policy of deterring insureds from entrusting automobiles to unsafe family drivers (e.g., Santiago, as Plaintiffs agree, assuming they alleged negligent entrustment in the underlying lawsuit), keeping those drivers off public roadways.

**D.     CEM had no Duty to Defend or Indemnify Because Neither Ruiz nor Santiago Notified the Insurer of Suit or Service and Never Requested a Defense.**

There is no evidence that either Ruiz or Santiago ever notified CEM or its agent, Pronto, that either had been sued or that either forwarded the suit papers to CEM or Pronto.

Thirty-five years ago, in *Weaver v. Hartford Accident & Indem. Co.,* 570 S.W.2d 367 (Tex. 1978), the Texas Supreme Court held that a liability insurer has no duty to gratuitously inject itself into the defense of a lawsuit when the insured has given no indication that it expects the insurer to provide a defense. The rationale was that a "basic purpose" of notice-of-suit conditions in liability policies is to advise the insurer of the insured's desire for a defense and expectation that the insurer will answer on the insured's behalf. *Weaver,* 570 S.W.2d at 369. Until the insurer has reason to

---

[35]   *Greene v. Great Am. Ins. Co.*, 516 S.W.2d 739, 740-743 (Tex. Civ. App.–Beaumont 1974, writ ref'd n.r.e.) (policy containing a clause excluding insured's son from coverage until he reached a certain age held valid and enforceable); *Radoff v. Utica Mut. Ins. Co.*, 510 S.W.2d 151 (Tex. Civ. App.–Dallas 1974, writ ref'd n.r.e.) (endorsement excluding coverage as to claims arising when automobile was being operated by underage driver, unless accompanied by insured or his spouse, was permitted).

believe that the insured expects a defense, the insurer is under no obligation to act, and indeed it would be improper for an insurer to answer for the insured or to hire an attorney to do so.

In 2008, the Supreme Court made it clear that: (1) a liability insurer's duty to defend can only be triggered by receipt of notice of service and a request for defense from the insured and (2) prejudice is not the issue in a case, such as this one, where the insured provides *no notice* of service of citation to the insurer and *never* requests a defense.

In 2008, the Texas Supreme Court issued *National Union Fire Ins. Co. of Pittsburgh, PA v. Crocker,* 246 S.W.3d 603 (Tex. 2008). In that case, the court held:

> ***Insurers owe no duty to provide an unsought, uninvited, unrequested, unsolicited defense....*** [B]ecause insurers need not provide coverage to additional insureds who never seek it, National Union had no duty either to inform [the alleged omnibus insured] of available coverage or to voluntarily undertake a defense for him....

*Crocker,* 246 S.W.3d at 610 (emphasis added).

In addressing the issue of prejudice, the Supreme Court said this:

> National Union was obviously prejudiced in the sense that it was exposed to a $1 million [default] judgment.  The question, however, is not whether National Union suffered exposure to a financial risk, but whether it should be estopped to deny coverage because it was aware that Morris [the alleged insured] had been sued and served and had ample time to defend him.  The answer must be "no" based on the discussion above – **National Union had no duty to notify Morris of coverage and no duty to defend Morris until Morris notified National Union that he had been served with process and expected National Union to answer on his behalf.**  "Because [National Union] was not under a duty to defend the suit against its insured when [it received actual notice of the claim], it is not estopped from asserting [the insured's] breach of the policy as a bar to its liability." **Absent a threshold duty to defend, there can be no liability to Morris, or to Crocker derivatively.**

*Crocker,* 246 S.W.3d at 609 (emphasis added).

The Plaintiffs here claim damages in connection with the insurer's alleged failure to defend Ruiz and Santiago in the underlying suit. The claims all flow from the alleged failure to defend. But, "[a]bsent a threshold duty to defend, there can be no liability to [the insured], or to [the claimant] derivatively." *Id.* at 609. "[A]n insurer has no duty to defend and no liability under a policy unless and until the insured in question complies with the notice-of-suit conditions and demands a defense. This is true even when the insurer knows that the insured has been sued and served and when the insurer actually defends other insureds in the same litigation...." *Jenkins v. State and County Mut. Fire Ins. Co.,* 287 S.W.3d 891, 897 (Tex. App. – Fort Worth 2009, pet. denied). See also *15625 Ft. Bend Ltd. v. Sentry Select Ins. Co.*, 991 F. Supp. 2d 932, 941 (S.D. Tex. 2014) ("Under Texas law a liability insurer has no duty to defend or indemnify an insured unless and until the insured provides notice to the insurer by submitting the suit documents and requests that the insurer provide it with a defense.") *Id.* In *Crocker*, the Supreme Court explained that an insurer cannot assume that an insured who has not given notice to the insurer, is looking to the insurer to provide a defense. Potential insureds "for a variety of reasons, might well opt against seeking a defense from an insurer." *Id.* at 610.

"Absent a threshold duty to defend, there can be no liability to [the insured], or to [the claimant] derivatively." *Crocker,* 246 S.W.3d at 609. See also *Hudson v. City of Houston*, 392 S.W.3d 714, 729 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("The City had no duty to defend or to indemnify ... and no duty to pay the default judgment. Accordingly, Hudson's claims, including her *Stowers* and Insurance Code claims, fail as a matter of law.") And see *Huntington Operating Corp. v. Sybonney Exp., Inc.*, CIV.A. H-08-0781, 2009 WL 2423811, at *2 (S.D. Tex. Aug. 3, 2009). Moreover, "[t]o recover on the insurance policy as a third-party beneficiary, [a

plaintiff] must initially show that ... the insured ... complied with the conditions precedent and terms of the policy." *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex. 1998). Because Santiago and Ruiz never complied with the notice provisions, claims brought based on the insurance contract now fail.

**E.     Because CEM is Not Liable Under the Policy, Plaintiffs' Extra-Contractual Claims Also Fail.**

When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (*per curiam*). "There can be no liability under... [prompt pay and deceptive practices sections of] the Insurance Code if there is no coverage under the policy." *Page*, 315 S.W.3d at 532. Moreover, for the same reason, claims under the DTPA or any common law theory of a breach by an insurer, *Stowers* for example, cannot stand. *Id.* The Texas Supreme Court has stated that there "can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).  *See also Hudson v. City of Houston*, *supra*, 392 S.W.3d at 729.

## IV.

## <u>CONCLUSION</u>

As set forth above, Defendant would show that the summary judgment evidence on file herein establishes that Ruiz *elected, in exchange for a reduced premium,* to purchase a limited policy from CEM. Ruiz acknowledged, in the forms she signed, her understanding and agreement that the limited policy operated to limit the coverage otherwise afforded. As applicable here, if coverage was going to be afforded for Ruiz's son, Santiago, who was a resident of her household, Santiago had

to be specifically listed on the policy.  He was not.  Hence, there was no coverage for the lawsuit or the claims asserted against Ruiz or Santiago.

And, as Pronto reminded Ruiz after this accident, if she wanted coverage for any suit filed against her, it was incumbent upon her to comply with the policy's notice requirements. There is no evidence that either she or Santiago complied with the policy's notice conditions, which are a condition precedent to the liability coverage.  Because the putative insureds did not comply with the conditions precedent, CEM had no duty to defend Ruiz or Santiago in the underlying suit and no duty to indemnify them for the Default Judgment or to now pay the Plaintiffs, derivatively for their judgment.

## **PRAYER**

WHEREFORE, Defendant CEM prays that its Motion for Summary Judgment be granted, and that Plaintiffs' lawsuit be dismissed with prejudice, with costs taxed against Plaintiffs; further, that Defendant be granted all such other and further relief to which it may be justly entitled.

Respectfully submitted,


BY:    /s/ MICHAEL A. HUMMERT
       **Michael A. Hummert**
       Lead Attorney
       State Bar No. 10272000
       mhummert@bishophummert.com
       **Ignacio Barbero**
       State Bar No. 00796162
       ibarbero@bishophummert.com
       **William A. Newman**
       State Bar No. 14967990
       wnewman@bishophummert.com
       BISHOP & HUMMERT
       A Professional Corporation
       5910 N. Central Expressway, Suite 1600
       Dallas, Texas 75206
       Telephone:  (214) 987-8181
       Facsimile:   (214) 987-8180

       **ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

On the 4th day of August, 2016, I electronically submitted the foregoing document with the clerk of court of the U.S. District Court, Southern District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


       /s/ MICHAEL A. HUMMERT
       MICHAEL A. HUMMERT